IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CORNELIUS BROWN, ) | |
| ) | |
| Plaintiff, ) | 8:16CV377 |
| ) | |
| v. ) | |
| ) | |
| DEPARTMENT OF HEALTH AND ) | **MEMORANDUM** |
| HUMAN SERVICES, COURTNEY ) | **AND ORDER** |
| PHILIPS, Director, SHANNON ) | |
| BLACK, Program Director, KYLE ) | |
| MALONE, SOS Team Leader, ) | |
| WILLIAM BECKER, Program ) | |
| Therapist, CINDY DYKEMAN, ) | |
| Program Manager, and LISA ) | |
| LAURELL, Program Social Worker, ) | |
| et. al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Cornelius Brown ("Plaintiff") filed his Complaint (Filing No. 1) on August 1, 2016, and a Supplemental Complaint (Filing No. 1-1) on August 24, 2016, and was subsequently granted leave to proceed in forma pauperis (Filing No. 6). The court now conducts an initial review of Plaintiff's complaints to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

### I. SUMMARY OF COMPLAINT

Plaintiff alleges that the Douglas County Mental Health Board civilly committed him to the Lincoln Regional Center ("LRC") in Lincoln, Nebraska, on September 9, 2015, and he was confined there when the incidents at issue occurred. Plaintiff has recently been moved to the Norfolk Regional Center ("NRC"). (Filing 7.) Plaintiff sues Courtney Philips, Director of the Nebraska Department of Health

and Human Services ("DHHS")—the state agency that operates the LRC and NRC—and five employees who work at the LRC for treating him unfavorably because he is transgender. Plaintiff sues each of the defendants in their individual and official capacities.

Plaintiff's Complaint alleges that he is an "openly documented transgender who indentif[ies] as female, and has been dressing accordingly since age 16." (Filing No. 1 at CM/ECF p. 4 (capitalization corrected).) In both May and June of 2016, Plaintiff approached defendant Kyle Malone, a team leader, and requested that Plaintiff be allowed to "dress in clothing that identifies with her gender identity" and to purchase and wear clothing consistent with Plaintiff's gender identity. Malone laughed at Plaintiff, told Plaintiff that her[1] "request is as good as denied," and said, "If you ever want to get outa here, just talk in your groups, & let the rest of this go."

In June 2016, Plaintiff mailed a complaint to defendant DHHS Director Philips concerning Plaintiff's "expression of her . . . transgender rights and the discrimination and inhumane treatment plaintiff has been subjected to," including being moved to a room with her own bathroom (instead of sharing a bathroom with another patient) that was visible to all LRC staff and administration, and being subject to staff members barging into her room without knocking. (Filing No. 1 at CM/ECF p. 5 (capitalization corrected).) Plaintiff alleges that Philips has not responded to her complaint.

Plaintiff accuses defendant Shannon Black, LRC Program Director, of discrimination, mental anguish, and defamation of character during June and July 2016 for moving Plaintiff to a new room after she met with Black to discuss "being allowed to dress in attire that represents Plaintiff's gender identity." (Filing No. 1 at CM/ECF p. 6 (capitalization corrected).) Plaintiff alleges that both Black and LRC Program Manager Cindy Dykeman told Plaintiff to submit in writing the items

---

[1]From this point on, I shall use feminine pronouns to refer to Plaintiff, in accordance with her expressed gender preference.

Plaintiff would like to have. Plaintiff complied[2], but has not received a reply and has thus "been denied to transition." (Filing No. 1 at CM/ECF p. 6.)

Plaintiff further complains that defendants Lisa Laurell, LRC Social Worker and Group Therapist, and William Becker, LRC Therapist and Group Facilitator, have "initiated negative retaliation" against Plaintiff by writing "negative entries" about Plaintiff to the mental health board. Plaintiff claims that other inmates have not been treated this way, even those who were caught having sexual interaction, viewing child pornograpy, and attacking a therapist.

In her Supplemental Complaint (Filing No. 1-1), Plaintiff alleges that since the filing of her August 1, 2016, Complaint in this court, defendants Laurell, Black, and Becker have further retaliated against her. Specifically, Plaintiff says she filed her first Complaint and then contacted a staff writer for the local newspaper, the Lincoln Journal Star, who expressed interest in Plaintiff's Complaint and discussed writing a story on it. Thereafter, Laurell and Black sent an email throughout Plaintiff's housing unit at the LRC warning all staff that there would be "consequences for any communication with the plaintiff regarding her . . . concerns, and that no one from the media was allowed into the building to speak with the plaintiff without the named defendants['] permission." (Filing No. 1-1 at CM/ECF p. 2 (capitalization corrected).)

When Plaintiff approached Laurell about the situation, Laurell told Plaintiff to leave her office and, since then, Plaintiff's telephone calls have been monitored and Plaintiff has been subject to room searches for contraband three times a month, while other LRC residents are subject to contraband searches only once a month. Plaintiff claims that since she filed her lawsuit and talked to the newspaper, LRC staff has been

---

[2]Plaintiff requested "female undergarments (appropriate, reasonable amount)," "female dress: pants, tops, dresses, hair[,] make-up items, (reasonable amount)," and "female dress: shoes, stockings, (fishnets)[,] other fem[i]nine items." (Filing No. 1 at CM/ECF p. 11 (capitalization corrected).)

3

directed to open her room door without knocking; LRC has generated more negative treatment notes about Plaintiff; and the LRC denied Plaintiff the proper amount of "points" during the June and August 2016 reporting periods. (*Id*. at p. 3.)

Finally, Plaintiff alleges that she met with defendant Black[3] in August 2016, and Black "repeatedly denied" Plaintiff's requests concerning her gender identity, stating, "All this is gonna do is shoot you in the foot, this will keep you down here longer, so just focus on getting out of here." (*Id*.) Plaintiff has not received any further communication from the defendants since this meeting.

Pursuant to 42 U.S.C. § 1983, Plaintiff seeks to assert claims for declaratory, injunctive, and monetary relief for violations of the First, Fifth, Eighth, and Fourteenth Amendments that occurred when the defendants subjected Plaintiff to gender discrimination, cruel and unusual punishment, violation of Plaintiff's right to equal protection, and defamation of character related to her "constitutional rights to free gender expression." (Filing No. 1-1 at CM/ECF p. 3.) As far as injunctive relief is concerned, Plaintiff wishes to dress according to her gender identity at the LRC and requests to be transferred to a treatment facility that will not subject her to discrimination. (Filing No. 1 at CM/ECF pp. 8-9.)

Liberally construed, Plaintiff claims the defendants denied her equal protection by discriminating against her based on gender; subjected her to First Amendment retaliation; denied her due process under the Fourteenth Amendment; and defamed her character.

---

[3]Plaintiff also claims to have met with Dr. Sanat Roy, a LRC contract psychologist, at the same time she met with Black, but Plaintiff has not named Roy as a defendant.

4

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569-70 (2007); *see also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (quoting Hopkins v. Saunders, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." Topchian, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

5

### III.  DISCUSSION OF CLAIMS

### *A.  Monetary Relief Requested Against DHHS & Defendants in Official Capacities; Injunctive Relief Requested Against Defendants in All Capacities*

Plaintiff seeks monetary relief from the DHHS and state defendants in their official capacities for alleged past violations of federal law. Plaintiff is not entitled to such relief because the Eleventh Amendment to the United States Constitution provides states, state agencies, and state officials acting in their official capacities with immunity from suits brought by citizens of other states and from suits brought by a state's own citizens. *See Hadley v. North Arkansas Cmty. Technical Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996), *cert. denied*, 519 U.S. 1148 (1997); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 149 (1981); *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). An exception to this immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123 (1908), which permits prospective injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief. *Green v. Mansour*, 474 U.S. 64 (1985).

There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Therefore, Plaintiff's claims for *monetary* relief against the DHHS and the state defendants in their official capacities are barred by the Eleventh Amendment. While Plaintiff's claims for prospective *injunctive* relief against these defendants may not be dismissed on Eleventh Amendment grounds pursuant to *Ex Parte Young*, they will be dismissed as moot as to some of the defendants. Specifically, Plaintiff's requests for injunctive relief against defendants Black, Malone, Becker, Dykeman, and Laurell are

6

moot because these defendants are alleged to work at the LRC and are not alleged to have any authority over Plaintiff at the NRC, where she is now housed. Thus, these defendants would be incapable of complying with any injunctive relief ordered as to this plaintiff. *See Randolph v. Rodgers*, 253 F.3d 342, 345-46 (8th Cir. 2001) (denying prisoner's requested prospective injunctive relief as to several employees of correctional facility in which prisoner was no longer incarcerated because those employees had no authority to execute any granted injunctive relief at the prisoner's present facility).

However, because defendant Philips is alleged to be the director of the DHHS—the agency which governs both the LRC and NRC—Plaintiff's request for prospective injunctive relief against Philips may proceed. *Randolph*, 253 F.3d at 346 (relocated prisoner's claim could proceed against director of state department of corrections because director had authority over all facilities, and injunction against director would have effect no matter where in the state correctional system prisoner was located).

## B. Equal Protection

Plaintiff complains that the defendants violated the Equal Protection Clause's prohibition against sex-based discrimination when the defendants treated her unfavorably because of her gender non-conformity. Similar claims have been allowed to proceed under the Equal Protection Clause. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."); *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (holding that discriminating against someone on the basis of his or her gender non-conformity constitutes sex-based discrimination under the Equal Protection Clause; noting the "congruence between discriminating against transgender and transsexual individuals and discrimination on the basis of gender-based behavioral

norms"); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004) (discrimination against transgender individual because of his or her gender non-conformity is gender stereotyping prohibited by Equal Protection Clause).

While the court will ultimately need to determine the level of scrutiny[4] applicable to the government action at issue, Plaintiff's allegations are sufficient at the pleading stage to state an equal protection claim. *See Denegal v. Farrell*, No. 1:15-cv-1251, 2016 WL 3648956, at *7 (E.D. Cal. July 8, 2016) (Findings and Recommendations of Magistrate Judge adopted on Sept. 9, 2016) ("The level of scrutiny applicable to classifications based on transgender status has not been determined by the United States Supreme Court," and "Courts in this circuit have reached differing conclusions as to the level of scrutiny to be applied."); *Adkins v. City of New York*, 143 F. Supp. 3d 134, 140 (S.D.N.Y. 2015) (concluding that "transgender people are a quasi-suspect class" and court "must apply intermediate scrutiny to defendants' treatment of plaintiff" in § 1983 action brought by transgender arrestee against city officials); *Fields v. Smith*, 712 F. Supp. 2d 830 (E.D. Wis. 2010), *aff'd*, 653 F.3d 550 (7th Cir. 2011) (applying rational basis review to equal protection claim brought by inmates with gender-identity disorder).

Therefore, I shall allow Plaintiff's equal protection claim to go forward.

---

[4]Further, no matter what level of scrutiny applies, the defendants' treatment of Plaintiff must be balanced against penological interests like safety and protection from violence. *Fegans v. Norris*, 537 F.3d 897, 906 (8th Cir. 2008) (inmate's equal protection claim failed when prison had valid penological interests of safety and security for differing hair-length rules for men and women); *Tates v. Blanas*, No. S-00-2539, 2003 WL 23864868, at *10 (E.D. Cal. Mar. 11, 2003) ("With regard to [transsexual detainee's request for a] bra, the possibility that it could be misused as a weapon or noose must be balanced against any medical or psychological harm to him resulting from denial of a bra"; defendants may not "apply a categorical rule . . . that denies an inmate a bra simply because he is a transgender or is housed in a men's ward").

## C. *First Amendment Retaliation*

Plaintiff claims that the defendants retaliated against her for filing this lawsuit and for talking to the local newspaper.

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) she engaged in protected activity; (2) the government official took adverse action against her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870 (2004) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)). Further, "[t]o prevail in an action for First Amendment retaliation, [a plaintiff] must show a causal connection between [the defendant's] retaliatory animus and [the plaintiff's] subsequent injury." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)).

Plaintiffs's allegations of retaliation are plausible. They suggest that the defendants reacted to Plaintiff's complaining to LRC staff, filing a civil lawsuit, and contacting the newspaper by taking steps to prevent Plaintiff from advancing in her treatment program, such as writing "negative entries" about Plaintiff to the mental health board and denying Plaintiff the proper amount of "points" during certain reporting periods.

Therefore, Plaintiff's retaliation claims may proceed.

## D. *Due Process*

Plaintiff bases some of her claims on the Eighth Amendment. However, the Eighth Amendment's proscription against "cruel and unusual punishments" does not apply to civilly committed detainees because they are not being punished for criminal offenses. *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("because an

involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply"). Rather, "[t]he rights of patients in psychiatric hospitals more appropriately arise under the Fourteenth Amendment." *Id.*

Under the Due Process Clause of the Fourteenth Amendment, involuntarily committed persons retain substantive liberty interests, which include the rights to adequate food, shelter, clothing, and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint. *Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982). To determine whether the nature and extent of an infringement of a liberty interest rises to the level of a due process violation, the court must balance the individual's liberty interest against relevant state interests. *Id.* at 320-321.

Here, Plaintiff claims she is being denied access to items like feminine clothing and makeup that have been characterized as part of a treatment regimen for gender-identity disorder ("GID"). See *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (medical treatment of inmate with GID geared toward alleviating severity of inmate's distress included hormonal treatments, feminine products and clothing, and hair removal); *Konitzer v. Frank*, 711 F. Supp. 2d 874 (E.D. Wis. 2010) (denying in part prison's motion for summary judgment in male-to-female transgender inmate's suit to gain access to treatment for GID, including female clothing and grooming items; noting that "[m]akeup and items such as depilatories and hair growth stimulators are similar to feminine clothing for purposes of [Plaintiff's] GID treatment," and while such items "may appear superficial or not medical," they "in fact play a prominent role in the treatment of GID"); Yvette K. W. Bourcicot & Daniel Hirotsu Woofter, *Prudent Policy: Accommodating Prisoners with Gender Dysphoria*, 12 Stan. J. Civ. Rts. & Civ. Liberties 283 (2016) ("'Real life experience,' in which an individual outwardly expresses his or her gender identity, is a recognized diagnostic tool and often one component of a broader treatment plan for individuals with gender dysphoria. For example, real life experience for a male-to-female transsexual individual can include assuming a feminine appearance (such as by wearing female garments, makeup, and

long hair), and effecting effeminate mannerisms and speech patterns.") (footnotes omitted).

"[W]here a [civilly-committed] patient's Fourteenth Amendment claim is for constitutionally deficient medical care, we apply the deliberate indifference standard from the Eighth Amendment." *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (quotation marks and citation omitted); *Revels*, 382 F.3d at 874 (recognizing that Fourteenth Amendment applied to involuntarily committed patient's § 1983 claims, but applying Eighth Amendment standards because patient's "confinement is subject to the same safety and security concerns as that of a prisoner"). Therefore, while Plaintiff is not a prisoner, Eighth Amendment standards apply to her claim.

The Eighth Amendment deliberate indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) she suffered from objectively serious medical needs, and (2) the defendants knew of, but deliberately disregarded, those needs. *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), as amended (Mar. 4, 2016). "A medical condition is 'objectively serious' if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the medical need." *Id.* "The subjective prong of deliberate indifference is an extremely high standard that requires a mental state of more . . . than gross negligence. It requires a mental state akin to criminal recklessness." *Id.*

The Eighth Circuit Court of Appeals has applied this Eighth Amendment analysis to claims similar to Plaintiff's, as have the United States Supreme Court and courts in other jurisdictions. *Reid v. Griffin*, 808 F.3d 1191, 1192 (8th Cir. 2015) (applying Eighth Amendment to inmate's claim that prison officials refused to provide hormone-replacement therapy for GID); *Long v. Nix*, 86 F.3d 761 (8th Cir. 1996) (prison officials were not deliberately indifferent to medical needs of prisoner who claimed to be transsexual and, thus, prison officials were not liable in prisoner's § 1983 action alleging that prison officials' failure to treat inmate's GID constituted cruel and unusual punishment; assuming without deciding that GID is serious medical

need for purposes of Eighth Amendment analysis); *White v. Farrier*, 849 F.2d 322 (8th Cir. 1988) (applying Eighth Amendment to transsexual inmate's § 1983 claim against prison officials who refused to permit inmate to have sexual reassignment surgery, cosmetic procedures, hormone therapy, female clothing and cosmetics, and transfer to women's prison; concluding that transsexualism is serious medical need to which prison officials may not act with deliberate indifference); *see also Farmer v. Brennan*, 511 U.S. 825 (1994) (§ 1983 claim brought by preoperative transsexual inmate challenging prison officials' failure to protect him from danger analyzed under Eighth Amendment); *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (applying Eighth Amendment to inmate's lawsuit against prison officials for failure to provide sex-reassignment surgery to treat inmate's GID); *Battista v. Clarke*, 645 F.3d 449, 452 (1st Cir. 2011) ("although protection of civilly committed persons rests on due process concepts rather than the Eighth Amendment, deliberate indifference is the familiar test for medical care"; affirming district court's finding that state officials were deliberately indifferent—or exercised unreasonable professional judgment—with regard to medical needs of civil detainee with GID by denying detainee hormone therapy); *Konitzer v. Frank*, 711 F. Supp. 2d 874 (E.D. Wis. 2010) (applying Eighth Amendment analysis and denying in part prison's motion for summary judgment in male-to-female transgender inmate's suit to gain access to treatment for GID).

As Plaintiff alleges that she is an "openly documented transgender," and I must construe her Complaint liberally, Plaintiff plausibly alleges that she suffers from an objectively serious medical need and that the defendants knew of her condition, but refused treatment for that condition. At this preliminary stage, Plaintiff has stated a due process claim for relief under the Fourteenth Amendment for deliberate indifference to Plaintiff's serious medical needs.[5]

---

[5]Of course, it remains to be seen whether Plaintiff has been medically diagnosed with gender-identity disorder or dysphoria and whether medical professionals think the therapy suggested by Plaintiff (access to female undergarments, clothing, and cosmetics) is appropriate. *Reid*, 808 F.3d at 1192 (no Eighth Amendment violation

### E.  *Defamation*

Plaintiff alleges that she suffered "defamation of character" when the defendants violated her constitutional rights. However, Plaintiff does not state who made the allegedly defamatory statements or the nature of the alleged defamatory statements. Regardless, "[d]amages for defamation are not recoverable under § 1983 because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States." *Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975). Accordingly, Plaintiff's defamation claim will be dismissed.

### F.  *Other Possible Claims*

To the extent Plaintiff intends to base a § 1983 claim on her allegations that the defendants failed to respond to her grievances and complaints in a timely fashion, such allegations do not constitute a violation of Plaintiff's constitutional rights. *See Merryfield v. Jordan*, 431 Fed. App'x 743, 749 (10th Cir. 2011) (holding that civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances and regulating access to his attorney were insufficient to state a constitutional claim); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms).

---

when prison officials refused to provide hormone-replacement therapy for GID when numerous mental-health professionals evaluated inmate and none diagnosed her with GID or concluded that treatment for such disorder was appropriate).

13

Accordingly,

IT IS ORDERED:

1. Plaintiff's claims for *monetary* relief against the DHHS and all other defendants in their official capacities are dismissed as barred by the Eleventh Amendment;

2. Plaintiff's claims for injunctive relief as against defendants Black, Malone, Becker, Dykeman, and Laurell in their individual and official capacities are dismissed as moot;

3. Plaintiff's defamation claim against all defendants is dismissed for failure to state a claim upon which relief can be granted;

4. To the extent Plaintiff attempts to assert a § 1983 claim that the defendants failed to respond to her grievances and complaints in a timely fashion, such claim is dismissed for failure to state a claim upon which relief can be granted;

5. This case may proceed to service of process as to the following claims: (A) claims for prospective injunctive relief against the DHHS and defendant Philips in her official capacity and (B) claims for monetary and declaratory relief against defendants Philips, Black, Malone, Becker, Dykeman, and Laurell in their individual capacities for (i) denial of equal protection by subjecting Plaintiff to gender discrimination; (ii) First Amendment retaliation; and (iii) denial of due process under the Fourteenth Amendment;

6. The clerk of the court is directed to send to Plaintiff copies of the Complaint (Filing No. 1 and 1-1) and this Memorandum and Order, along with eight summons forms and eight USM 285 Forms for service on the following defendants: the Nebraska Department of Health and Human Services; Philips in her official

capacity; and Philips, Black, Malone, Becker, Dykeman, and Laurell in their individual capacities. (*See* attached Notice Regarding Service.)

Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 120 days from the date of this order to complete service of process. (*See* this court's General Order No. 2015-06.)

7. If requested to do so in this matter, the United States Marshal will serve all process in this case without prepayment of fees from Plaintiff. In making such a request, Plaintiff must complete the USM 285 forms to be submitted to the clerk of the court with the completed summons forms. Without these documents, the United States Marshal will not serve process. Upon receipt of the completed forms, the clerk of the court will sign the summons forms and forward them to the United States Marshal for service on the defendants, together with a copy of the Complaint. In the event Plaintiff asks the United States Marshal to serve process, the clerk of the court will make copies of the Complaint for service on the defendants.

8. The clerk of the court is directed to set the following pro se case management deadline: March 10, 2017: check for completion of service of process.

DATED this 9th day of November, 2016.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

**Notice Regarding Federal Rule of Civil Procedure 4**

Federal Rule of Civil Procedure 4 requires that a defendant be served with the complaint and a summons. This is to make sure that the parties you are suing have notice of the lawsuit. Federal Rule of Civil Procedure 4(e) governs service of process on an individual (*i.e.*, your individual-capacity claims). Federal Rule of Civil Procedure 4(j) governs service of process on a state (*i.e.*, your official-capacity claim).

In this case, Rule 4(e) and (j) mean copies of the summons and complaint must be served on: (1) defendants Philips, Black, Malone, Becker, Dykeman, and Laurell individually; and also (2) the Nebraska Attorney General's Office or the chief executive officer for the State of Nebraska as to defendants Nebraska Department of Health and Human Services and Philips in her official capacity.

You may ask the United States Marshal to serve process, as described in the court's order, because you are proceeding in forma pauperis.

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.